UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MYLES CHILDRESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00580-JAR |
| | ) | |
| WAL-MART STORES EAST I, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendant Wal-Mart Stores East I, LP.  ECF No. 42.  Plaintiff Myles Childress has filed a response (ECF No. 49), and Defendant has filed a reply (ECF No. 52).  Plaintiff sought leave to file a sur-reply (ECF No. 58), which the Court granted (ECF Nos. 59 and 60).  This matter is now fully briefed and ripe for disposition.  For the reasons set forth below, the Court will deny the motion.

**Background**

Plaintiff's Complaint

Plaintiff first filed this case in the Circuit Court of St. Louis County, Missouri, on May 2, 2023.  ECF No. 7.  Plaintiff brought his claims against Defendant after he allegedly sustained injuries while delivering goods to a Walmart store in Bridgeton, Missouri.  Plaintiff raised claims against both Defendant Walmart and Walmart's employee, an unknown Doe Defendant.  On November 30, 2023, while the case was still in the Circuit Court, Plaintiff amended his complaint.  ECF No. 8.

On April 22, 2024, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1446(a) asserting this Court's diversity jurisdiction under 28 U.S.C. § 1332.  ECF No. 1.

On November 4, 2024, Plaintiff filed a motion to amend his complaint and to voluntarily dismiss the Doe Defendant, which the Court granted as unopposed. ECF Nos. 31 and 34. Plaintiff then filed his second amended complaint, which raises three (3) claims against Defendant Walmart: Count I for vicarious liability for the negligence of Defendant's employee; Count II for negligent training; and Count III for negligent supervision.

Relevant Material Facts

The following facts are uncontroverted:

A.   The Incident

In 2018, Plaintiff was employed as an independent contractor driving a delivery truck for Swift Transportation. Plaintiff primarily picked up Walmart trailers and delivered their contents to Walmart stores.

On or about October 19, 2018, Plaintiff's job was to drive his truck to a Walmart distribution center in the St. Louis area, pick up a trailer loaded with Walmart inventory, and deliver the inventory to several Walmart locations. One of the delivery stops was the Walmart store in Bridgeton, Missouri, located on St. Charles Rock Road in St. Louis County (the "store"). When he arrived at the store, he backed his trailer into the loading dock, exited his truck, and rang the buzzer outside of the door. An unidentified man[1] responded to the buzzer, opened the door, greeted Plaintiff, allowed Plaintiff to enter the store, and signed Plaintiff's bill of lading. Plaintiff described the unidentified man as white, between five (5) and six (6) feet tall, mid to heavy weight, wearing a blue Walmart shirt and an orange and yellow vest.

---

[1] This unidentified man was the Doe Defendant who has subsequently been dismissed from this case.

Plaintiff and the unidentified man walked from inside the store back to the loading dock. The unidentified man opened the door of the loading dock leading to the trailer of Plaintiff's truck.  Plaintiff then entered the trailer and began pulling labels off the pallets and attaching the labels to his paperwork as evidence of delivery.  While Plaintiff was inside the trailer, the unidentified man operated a motorized pallet jack and began using it to remove pallets from the trailer.  The unidentified man used the pallet jack to unload pallets of groceries from Plaintiff's trailer without a spotter.  The unidentified man was also wearing a head device and talking as if he was engaged in conversation.  No one told Plaintiff to exit the trailer while the unidentified man was operating the pallet jack to remove the pallets from the trailer.

The unidentified man removed each pallet by pulling them directly out of the trailer.  At some point, the unidentified man began to back his pallet jack out of the trailer but stopped in the middle.  Plaintiff was still removing labels from the pallets with his back to the unidentified man. The unidentified man attempted to turn the pallet jack around.  Some part of the pallet on the pallet jack snagged Plaintiff's pants and knocked him to the floor.  While Plaintiff was on the ground, the unidentified man continued turning the pallet, pushing Plaintiff across the floor and against the wall of the trailer.  Plaintiff's lower back struck the wall of the trailer, and his whole body was pressed between the pallet and the wall of the trailer.  Plaintiff was pushed up against the trailer's wall like this three times.  Plaintiff was yelling as he was being pushed against the trailer's wall.  After being pushed against the wall by the pallet for the third time, the unidentified man stopped and asked if Plaintiff was okay.  Plaintiff responded that he did not know.

After these events, Plaintiff exited the trailer, walked to the edge of the loading dock, and checked for signs of injury.  There were cuts on Plaintiff's ankle, and he felt pain in his knees and lower back.  The unidentified man finished unloading the trailer, went back inside the store,

3

and signed Plaintiff's paperwork.  The unidentified man then led Plaintiff out of the store's back door and never asked Plaintiff to fill out an incident report.

As Plaintiff walked toward his truck, he felt dizzy.  He called his dispatcher from Swift and reported the incident.  The Swift dispatcher called an ambulance.  The ambulance transported Plaintiff to DePaul Hospital.

Plaintiff never called Defendant to report the incident.  Plaintiff never filled out any incident reports with Defendant about the incident.  Defendant's store managers searched for an accident file or any materials concerning the alleged incident and found nothing.  The store's management also searched Defendant's company-wide incident reporting system for Plaintiff's name and found nothing.  The store's management searched its hard-copy records and could not find anything about the incident.  The store's management searched for documentation of any requests for video or actual video footage of the incident but could not find any.  Defendant deletes its security video footage after ninety (90) days.  Kenneth Douglas, an overnight stocker or overnight support manager working at the store on the night of the incident had not heard of any incident like this one ever happening at the store.

B.    Walmart's Policies

An electric pallet jack would have been used to unload a trailer filled with pallets of groceries. According to Walmart's "Safe Operating Procedures of the Pallet Jack," a spotter is required when power lifting equipment is used.  A spotter should be located to ensure that the equipment operator is aware of any people or other obstacles.  This spotter should be located outside of the trailer where the trailer meets the loading dock.

Walmart's "Pallet Jack Safety Work Practices" specifically prohibits use of any devices that would interfere with hearing while operating a pallet jack.  The spotter should be able to

4

communicate with the operator of the pallet jack in a normal tone.  If the spotter sees the operator using any such device, operation should immediately cease.  Walmart team leads and coaches are responsible for ensuring that warehouse associates, team leaders, or coaches do not wear headsets while operating loading equipment.

It is not appropriate for a Walmart employee using pallet lifting equipment to turn a power jack around while inside of a tailer.  Instead, Walmart employees should remove pallets from a trailer by backing up completely.  However, according to Mr. Douglas, there are occasions when an operator of an electric pallet jack would have to turn or twist the jack to pick up pallets that are placed sideways.

Walmart employees should not begin removing pallets from a trailer while the driver is still inside.  If a driver of a delivery truck is inside of the trailer while pallets are being removed, the proper procedure is for Walmart employees to tell the driver to get out of the trailer.  Both the spotter and the power jack operator are responsible for communicating this to the driver.  The equipment operator must be aware of the presence of the driver inside the trailer.  According to Defendant's policies, if a piece of power lifting equipment hits a driver of a trailer delivering merchandise to a Walmart store, the equipment operator needs to be recertified before being able to use such equipment again.

It is the responsibility of Walmart store employees to immediately report to a member of store management any injury.  A management employee would have been at the store between 10:00 p.m. and 7:00 a.m. on the night of the incident.  The unidentified man who met Plaintiff at the loading dock and unloaded the trailer would have been either an overnight team lead, an overnight department manager, or an overnight assistant manager.

C.    Plaintiff's Injuries

Dr. Richard Kube is an orthopedic spine surgeon practicing in Peoria, Illinois.  Dr. Kube treated Plaintiff.  He has not seen any of Plaintiff's medical records from before the incident, and he relied on Plaintiff to provide him with an accurate medical history.  Dr. Kube later admitted that Plaintiff had not provided him and his office with an accurate representation of his medical history.

Dr. Kube first saw Plaintiff on December 2, 2020, over two years after the incident occurred.  Plaintiff's chief complaint was back pain, axial pain, pain radiating into his legs, posterior buttocks, posterior thighs, and calves.  Plaintiff described sustaining the injury on or about October 20, 2018, when he was unloading a trailer.  Plaintiff described an incident where he was pulling a sticker off a pallet and was struck by another pallet being carried by a forklift. The two discussed the current condition of Plaintiff's spine and Plaintiff's prior back problems, including degenerative changes to Plaintiff's lumbar spine that were present before the incident. Dr. Kube testified that these degenerative changes would not change without surgery and would continue to worsen as Plaintiff aged.  According to Dr. Kube, just because a patient has degenerative disc disease does not mean that the patient needs an operation.  Physical therapy is the front-line treatment for people with degenerative disc disease.  A person with degenerative disc disease can be more susceptible to an injury from trauma.  Dr. Kube often sees patients who have degenerative disc disease who get worse following trauma or impact.

Dr. Kube reviewed an MRI scan of Plaintiff taken in December 2018.  Dr. Kube identified edema present in this MRI scan.  Dr. Kube testified that this edema is consistent with Plaintiff being hit by a forklift and being knocked to the ground.  Dr. Kube further testified that in his profession opinion, the incident on October 20, 2018, directly caused or contributed to

6

cause an aggravation of Plaintiff's pre-existing degenerative disc disease, causing Plaintiff's asymptomatic back issues to become symptomatic.  In Dr. Kube's opinion, the largest portion of Plaintiff's trauma occurred when he was knocked to the ground by the pallet during the incident at the store and was the likely cause of Plaintiff's back problems.  Dr. Kube testified that he believes this was the cause of Plaintiff's spine injuries because Plaintiff said he was asymptomatic before the incident and only developed symptoms following the incident.

Dr. Kube recommended surgery to address Plaintiff's back problem.  He performed this surgery on Plaintiff on April 19, 2021.  Dr. Kube performed a second surgery on Plaintiff on October 25, 2021.

Dr. Brett Taylor is an orthopedic spine surgeon hired as an expert witness in this case by Defendant.  He testified that the incident at the store on October 20, 2018, exacerbated Plaintiff's pre-existing spinal condition.

Plaintiff's medical records reflect that he was seen multiple times by his physician between 2015 and 2018 and did not express any complaints of back pain.

The Parties' Arguments

Defendant makes two arguments for why this Court should grant summary judgment in its favor.  First, Defendant argues that Plaintiff cannot establish the element of breach of a duty of care required to succeed on each of his three negligence claims.  Second, Defendant contends that Plaintiff cannot establish the element of causation for any of his claims.

The crux of Defendant's argument regarding breach is that Plaintiff cannot cite to record evidence, other than his own "mere allegations and conclusions," that the incident at the store even occurred.  Specifically, Defendant argues that it cannot locate any records of this incident ever occurring within its internal files.  Relying on its managers' failed attempts to locate

7

incident reports or any mention of Plaintiff's name within its records, Defendant argues that Plaintiff can cite to no evidence that this incident occurred at all, and therefore Plaintiff cannot establish that Defendant or its employees breached any duty of care.

Defendant also makes a side argument that Plaintiff had originally alleged that he was injured when a Walmart employee hit him with a forklift rather than an electric pallet jack. Defendant notes that Plaintiff later amended his pleadings to allege that he was struck by an electric pallet jack rather than a forklift.  Defendant contends that this discrepancy is additional evidence that the incident did not occur in the way that Plaintiff described in his original complaint.

Defendant also asserts that Plaintiff is unable to establish causation because he relies on the allegedly insufficient testimony of Dr. Kube.  Defendant argues that Dr. Kube's conclusions regarding causation are deficient because Dr. Kube relied on Plaintiff's inaccurate representation of his medical history.  Defendant further contends that the incident cannot be the "but for" or the proximate cause of Plaintiff's back injuries because Plaintiff already had records of degenerative changes in his spine before the incident occurred.  Essentially Defendant argues that Plaintiff's degenerative injuries were always present and were not a result of acute trauma, and therefore any treatment he received from Dr. Kube was going to occur anyway.  Defendant avers that Plaintiff's degenerative condition was not the proximate result of the incident but was present before the incident and would have required the same treatment regardless of whether the incident occurred.

Defendant again raises a side argument regarding whether Plaintiff properly disclosed Dr. Kube as an expert witness under Rule 26, and therefore questions whether Dr. Kube can even testify in this matter as an expert.  Defendant contends that (1) to establish causation in this case,

8

Plaintiff must present expert testimony; (2) Dr. Kube provides the only causation testimony in this case; and (3) Plaintiff's failure to properly disclose Dr. Kube as an expert within the timeframe permitted by the Court's case management order precludes the use of his testimony in defeating summary judgment.  Defendant has not filed a separate motion to exclude Dr. Kube's testimony under Federal Rule of Evidence 702.

In his response, Plaintiff argues that Defendant's motion should be denied and all of Plaintiff's claims should proceed to trial.  Plaintiff first argues that Defendant owed him a legal duty of care to protect against the danger anticipated by the use of the electric pallet jack in removing pallets from Plaintiff's trailer.  Second, Plaintiff contends that there remain issues of material fact regarding how the incident occurred and whether Defendant was negligent.  Plaintiff emphasizes that, despite Defendant's claims to the contrary, there is evidence in the record that the incident occurred and that it occurred in the way that Plaintiff describes.  Finally, Plaintiff asserts that there is evidence of causation, particularly Dr. Kube's testimony and the testimony of Defendant's expert, Dr. Taylor.  Plaintiff further contends that Defendant has not filed a motion to exclude Dr. Kube's testimony, and therefore its assertion that there is no record evidence that could establish causation is futile.

Defendant's reply offers several new arguments that were not raised in its motion.  First, Defendant argues that it did not owe a duty to Plaintiff because Plaintiff has not shown that Defendant "assumed control of the Swift trailer that Plaintiff solely operated." ECF No. 52 at 2.  Second, Defendant takes issue with the evidence cited by Plaintiff in his response, stating that "Plaintiff's conclusory allegations in his Affidavit have not been corroborated with any additional evidentiary materials." *Id.* at 3.  Finally, Defendant again harps on whether Dr. Kube

9

was properly disclosed and therefore questions whether Dr. Kube will be permitted to testify at trial.

Plaintiff's sur-reply directly responds to the argument that Dr. Kube was not properly disclosed in this matter. Plaintiff states that Dr. Kube is a treating physician and not a retained expert witness, so Plaintiff had no duty to supply a written expert report. Plaintiff also cites to an email communications between his counsel and counsel for Defendant in which they discussed when to take Dr. Kube's deposition. This email dates from months before the deadline for expert witness disclosure provided in the Court's case management order. Plaintiff also argues that, in these emails, Defendant's counsel waived his right to a discovery deposition of Dr. Kube. Plaintiff also states that he has properly disclosed Plaintiff's treating physicians, including Dr. Kube, in initial Rule 26 disclosures and that he properly disclosed the physicians at Prairie Spine & Pain Clinic, of which Dr. Kube is the founder and principal, as part of its Rule 26 expert disclosures. Plaintiff has not provided a copy of these disclosures for the Court's review, though Defendant has produced a copy of amended answers to Defendant's interrogatories dated November 4, 2024, where Plaintiff states that Dr. Kube will testify regarding causation. ECF No. 43-5.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the Court reviews the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted). To withstand a motion for summary

judgment, the nonmovant has the "burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). "The movant is entitled to judgment as a matter of law 'when the plaintiff has failed to make a sufficient showing of the existence of an essential element of her case.'" *Whitworth v. Kling*, 90 F.4th 1215, 1218 (8th Cir. 2024) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996)).

## Discussion

There remain genuine disputes of material fact necessitating a trial in this case. Defendant's attempts to establish the contrary are not supported by the record. Rather, Plaintiff has come forth with sufficient evidence from which a trier of fact could find that Defendant acted negligently.

Each of Plaintiff's claims sound in negligence. Defendants do not address Plaintiff's claims separately but instead argue that Plaintiff is unable to establish the essential elements of negligence.

Missouri law applies in this diversity suit. *See Cleek v. Ameristar Casino KC, LLC*, 47 F.4th 629, 635 (8th Cir. 2022). Under Missouri law, to succeed on a claim of negligence, a

plaintiff must show that (1) the defendant owed plaintiff a duty of care, (2) the defendant breached that duty, (3) plaintiff suffered an injury proximately caused by the defendant's breach. *Id.* at 635–36 (citing *Pippin v. Hill-Rom Co.*, 615 F.3d 886, 889 (8th Cir. 2010); *see also D.J. ex rel. R.J. v. First Student, Inc.*, 707 S.W.3d 581, 586 (Mo. 2025) (en banc) ("In an action for negligence, the plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach was causally connected to the plaintiff's injury.") (citation omitted).

Defendant's motion specifically attacks whether Plaintiff has come forth with evidence constituting a genuine dispute of material fact as to the elements of breach and causation. Though the parties have raised arguments regarding whether Defendant owed Plaintiff a duty at all, this argument was not raised in Defendant's original motion and therefore the Court will not address it. *See Green v. Missouri*, 734 F. Supp. 2d 814, 848 (E.D. Mo. 2010) ("As a general rule, courts will not consider arguments raised for the first time in a reply.") (citation omitted). The Court will therefore only address the issues of breach and causation below.

    A.    <u>Breach</u>

Defendant argues that Plaintiff cannot point to record evidence establishing a genuine issue of fact regarding whether Defendant breached a duty of care to Plaintiff. Defendant contends that Plaintiff cannot merely rely on his own Affidavit and testimony but must instead cite to some additional corroborative evidence to avoid summary judgment. Defendant cites to no legal authority supporting this contention. And the uncontroverted record evidence in this case shows that there is a genuine issue of material fact regarding whether Defendant's employee acted negligently in striking Plaintiff with the pallet while unloading pallets from Plaintiff's trailer and whether Defendant negligently trained or supervised its employee.

12

Walmart's lack of records of the incident is insufficient to establish Defendant's right to summary judgment. While Defendant may have no records of this incident, Plaintiff has cited to record evidence indicating that the incident occurred, namely Plaintiff's signed Affidavit (ECF No. 47-1) and Plaintiff's deposition testimony (ECF No. 47-2). These categories of evidence are sufficient to show that a genuine dispute of material fact exists. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party asserting that a fact cannot be or is genuinely disputed to cite to "particular parts of materials in the record, including *depositions*, documents, electronically stored information, *affidavits* or declarations, . . . .") (emphasis added). Summary judgment is not proper for Defendant because the issue of breach is genuinely disputed. This issue must proceed to trial for determination by the trier of fact.

B.     Causation

"In all tort cases, the plaintiff must prove that each defendant's conduct was an actual cause, also known as cause-in-fact, of the plaintiff's injury." *First Student*, 707 S.W.3d at 586 (cleaned up). "Once actual causation has been established, the issue becomes one of legal cause—also known as proximate cause—that is, whether the defendant should be held liable because the harm is the reasonable and probable consequent of the defendant's conduct." *Id.* (citation omitted). While the cause-in-fact is generally an issue of fact for determination by the jury, proximate cause is a "legal determination" made by the Court. *Id.*

There remain genuine disputes of material fact regarding whether Defendant's allegedly negligent actions caused Plaintiff's injuries in this case. The Court finds that there is sufficient record evidence from which a jury could find that the negligent actions of Defendant—via its employee's actions and its own failures to train or supervise its employee—were the actual cause of Plaintiff's injuries. As already addressed above, Plaintiff has come forth with evidence that he

13

was injured after being struck by a pallet that was on a pallet jack being operated by Defendant's employee.

While there is no dispute that Plaintiff's medical records indicate that he had degenerative back problems before the alleged injury occurred, both Dr. Kube and Dr. Taylor specifically testified that the alleged incident aggravated Plaintiff's degenerative spine condition, causing it to become symptomatic when it was previously asymptomatic.  Dr. Kube further testified that surgical intervention was necessary to treat this aggravated condition.  Dr. Kube also testified that the injuries to Plaintiff's spine are consistent with the way Plaintiff describes being knocked to the ground by the pallet.  There remains a genuine issue of material fact as to whether Defendant's negligence caused Plaintiff's injuries.

There is also sufficient record evidence supporting Plaintiff's contention that Defendant's negligence was the proximate cause of Plaintiff's injuries.  The aggravation of Plaintiff's degenerative disc issues and his subsequent treatment are the reasonable and probable result of Defendant's employee's failure to safely operate the pallet jack and Defendant's failure to train or supervise its employee in the operation of the pallet jack.  Defendant's own policies and procedures indicate it is aware of the potential for serious injuries to its employees and delivery drivers like Plaintiff when its employees use an electric pallet jack to unload pallets from a delivery trailer.  These injuries would include an acute injury from being knocked over by a pallet jack, regardless of whether this acute injury caused a preexisting, asymptomatic medical condition to become symptomatic.

The Court separately addresses Defendant's argument that Plaintiff cannot rely on Dr. Kube's testimony to defeat summary judgment because Dr. Kube was not properly disclosed as an expert witness in this case.  Defendant's only argument is that Plaintiff did not properly

disclose Dr. Kube as an expert witness before the deadline set to disclose experts under the Court's case management order.  ECF No. 16 at 1.

The Court finds Defendant's arguments unconvincing.  The Court also notes that Plaintiff's argument about whether Dr. Kube is required to submit an expert report does not directly address the issue raised by Defendant.[2]  Even so, the Court finds that Defendant has had sufficient notice of Dr. Kube's opinions regarding causation and has not been prejudiced by Plaintiff's alleged failure to timely disclose him.  The Court has reviewed the email exchange between the parties' counsel from before the disclosure deadline regarding (1) whether Dr. Kube was required to produce an expert report, and (2) what will be the purpose of his deposition.  These emails indicate that Defendant knew as early as July 24, 2024, that Dr. Kube was going to testify in this case and that, prior to Dr. Kube's deposition, Defendant stated he was not taking the deposition as a "discovery" deposition.  ECF No. 60 at 4–6.  Dr. Kube's deposition occurred on September 30, 2024, before the deadline for Plaintiff to make his experts available for deposition.  At this stage in the case and on this record, the Court finds that Defendant was at least on notice that Dr. Kube would be testifying in this case before the deadline for expert witness disclosure and that Defendant's argument in the motion for summary judgment are not sufficient to exclude Dr. Kube from offering his causation testimony at trial without some

---

[2]  The Court does not address whether Dr. Kube is required to produce an expert report in this case under Federal Rule of Civil Procedure 26(a)(2)(B) or a summary of his opinions as required by Rule 26(a)(2)(C).  *See Johnson v. Friesen*, 79 F.4th 939, 943 (8th Cir. 2023) (finding that whether an expert must provide an expert report under Rule 26(a)(2)(B) "does not turn on whether the treating physician expert was 'retained' or 'nonretained'" and finding that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one retained or specially employed to provide expert testimony in the case, and thus is required to submit an expert report in accordance with Rule 26(a)(2).").  As this issue was not raised by Defendant, its not relevant to consideration of its motion.

15

additional showing of prejudice.  Dr. Kube's causation testimony is sufficient to create a genuine issue of material fact that must proceed to trial, so the Court will deny Defendant's motion for summary judgment.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wal-mart Stores East I, LP's motion for summary judgment (ECF No. 42) is **DENIED**.

Dated this 30th day of May, 2025.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE